UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MUHAMMAD I. SAFDAR,

          Plaintiff,

v.

COSTCO WHOLESALE
CORPORATION, et al.,

          Defendants.

No. 2:26-cv-00382-DJC-CKD

ORDER

This case presents an employment dispute regarding Plaintiff Muhammad I. Safdar's claims of discrimination under the Fair Employment and Housing Act and common law claims for intentional infliction of emotional distress and wrongful discharge.  Plaintiff now moves to remand this action to state court and Defendants Costco Wholesale Corporation, Ramona Lozada, and Amanda Fears collectively move to dismiss.  For the following reasons, the Motion to Remand (ECF No. 7) is GRANTED and the Motion to Dismiss (ECF No. 5) is DENIED as moot.

////

////

////

////

1

# BACKGROUND

Plaintiff Muhammad I. Safdar ("Plaintiff") was employed by Defendant Costco Wholesale Corporation ("Costco") as a commercial driver beginning on or about November 18, 2020.  (Compl. (ECF No. 1-1) ¶ 8.)  On April 1, 2023, Plaintiff was involved in a serious motor vehicle accident caused by a third party and sustained physical injuries to his cervical spine and was diagnosed with post-traumatic stress disorder ("PTSD").  (*Id.* ¶ 10.)  Plaintiff notified Costco of his medical status and provided documentation from medical providers listing his work restrictions.  (*Id.* ¶ 11.)  These restrictions included a prohibition on commercial driving and a lifting limit of 15 pounds.  (*Id.*)  Thereafter, Plaintiff was placed on extended leave and was allegedly not offered any modified duty until after he retained counsel and initiated worker's compensation proceedings.  (*Id.* ¶ 12.)  On or around July 2023, Costco assigned Plaintiff to modified duty as a front desk clerk, a role consistent with his work restrictions.  (*Id.* ¶ 13.)  On September 3, 2023, Plaintiff's manager, Corey Larson, allegedly directed Plaintiff to resume commercial driving duties despite the known restrictions and without updated medical clearance.  (*Id.*)  Plaintiff complied and suffered a recurrence of PTSD symptoms.  (*Id.* ¶ 14.)  Plaintiff thereafter notified management of his condition and requested reassignment.  (*Id.*)  Costco removed him from the schedule and placed him back on leave, allegedly without offering any alternative accommodation.  (*Id.*)

Plaintiff remained on medical leave until December 2024, and during this time, he was medically cleared for modified work, including limited driving.  (*Id.* ¶ 15.)  Costco refused to reinstate Plaintiff unless he obtained full clearance for unrestricted commercial driving.  (*Id.*)  On or about September 27, 2024, Plaintiff obtained full medical clearance, including a valid Department of Transportation certification.  (*Id.* ¶ 16.)  However, Costco did not reinstate him to his prior position and instead assigned him to a physically demanding sorting role that required lifting 30–50 pounds, in excess of his documented permanent lifting restriction of 35 pounds.  (*Id.*)

Plaintiff informed management, including General Manager Ramona Lozada and Leave Specialist Marisa Reed, that the assigned duties were causing physical pain and were incompatible with his medical restrictions. (*Id.* ¶ 17.)  Costco allegedly continued to assign unsuitable work, and Plaintiff took medical leave again. (*Id.*)  On or about January 3, 2025, Amanda Fears, Assistant General Manager, informed Plaintiff that he could only return to work when he obtained a full release.  (*Id.* ¶ 18.) Costco allegedly "did not want to accommodate Plaintiff by allowing him to do a trial period in his original positions and thus implemented a 100% healed policy to support keeping Plaintiff on a forced leave of absence." (*Id.*)  On or about January 13, 2025, Plaintiff complained to Defendants about their intent to return him to work, given that Plaintiff had been cleared by his doctor and DOT.  (*Id.* ¶ 19.)  On February 5, 2025, Costco terminated Plaintiff's employment, citing his work restrictions as the reason for his termination, and indicating that Defendants provided Plaintiff with a resignation form to sign and return by January 18, 2025.  (*Id.* ¶ 20.) Plaintiff instead provided a doctor's note with restrictions, and allegedly as a result, Defendants terminated Plaintiff's employment.  (*Id.*)

In or around February 2025, Plaintiff underwent a Functional Capacity Evaluation ("FCE") and was cleared to perform full commercial driving duties without modification.  (*Id.* ¶ 21.)  Plaintiff requested that any termination be placed on hold until the FCE was completed, but Defendant allegedly ignored Plaintiff's requests. (*Id.*)  Plaintiff made multiple attempts to return to work, including submitting updated medical documentation, requesting reasonable accommodation, and applying for rehire.  (*Id.* ¶ 22.)  Throughout this period, Plaintiff was allegedly pressured to accept a compromise and release settlement, including statements from Fleet Manager Cory Childers, suggesting he "take a buck and go somewhere else."  (*Id.* ¶ 23.)  Plaintiff applied for rehire on March 3, 2025, and was denied.  (*Id.* ¶ 24.)  On March 10, 2025, Plaintiff wrote an e-mail to Defendant's management complaining that he had been

3

wrongfully terminated, requesting a meeting to address his ability to return to work and Defendants' alleged wrongful termination decision.  (*Id.* ¶ 25.)

On December 22, 2025, Plaintiff filed a lawsuit in the County of San Joaquin Superior Court, alleging several statutory claims under the Fair Employment and Housing Act ("FEHA"), wrongful discharge, and intentional infliction of emotional distress.  (*See generally* Compl.)  On February 11, 2026, Defendants removed the action to this Court.  (NOR (ECF No. 1).)  On February 13, 2026, Defendants filed a Motion to Dismiss.  (MTD (ECF No. 5).)  On February 26, 2026, Plaintiff filed a Motion to Remand.  (MTR (ECF No. 7).)  The Motions are fully briefed.  (Opp'n to MTD (ECF No. 9); Reply iso MTD (ECF No. 10); Opp'n to MTR (ECF No. 11); Reply iso MTR (ECF No. 12); Objs. (ECF No. 13); Response (ECF No. 14).)

### LEGAL STANDARD

"A motion to remand is the proper procedure for challenging removal."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)).  Generally, courts "strictly construe the removal statute against removal jurisdiction."  *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021).  The party asserting federal subject matter jurisdiction bears the burden of establishing its existence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A case may be removed to federal court if that court would have jurisdiction over the matter.  See 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).  Subject matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  To support diversity jurisdiction, the amount in controversy in the case must exceed $75,000, 28 U.S.C. § 1332(a), and there must be complete diversity between the parties, meaning that "each plaintiff must be diverse from each defendant."  *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).

4

A party's citizenship is determined by its state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A natural person's domicile is the state in which they physically reside and intend to remain indefinitely. *Id.* A corporation is domiciled in any state in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business, also known as its "nerve center," is the "place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Usually, this is the location of a corporation's headquarters. *Id.*

**DISCUSSION**

**I. Fraudulent Joinder**

Under the doctrine of "fraudulent joinder" or "sham defendant," a federal court may ignore a non-diverse defendant's citizenship if either of two stringent standards are met: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).

Defendants challenge the joinder of Defendants Ramona Lozada and Amanda Fears on the second basis. (*See generally* NOR; Opp'n to MTR.) Under this standard, Defendants must show there is no possibility that a state court would find that the Complaint states a cause of action against these Defendants. *Grancare*, 889 F.3d at 548. Defendants "bear[ ] a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Id.* (quoting *Hunter*, 582 F.3d at 1046) (alteration in original).

Establishing an inability to state a cause of action against a non-diverse defendant requires more than showing that the claim does not meet the standard for a motion to dismiss under Rule 12(b)(6). Rather, the Court must determine whether "there is a possibility that a state court would find that the complaint states a cause of

action against any of the resident defendants."  *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003)); *Grancare*, 889 F.3d at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.").  "Consequently, if a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden of showing fraudulent joinder has not been met."  *Ontiveros v. Michaels Stores, Inc.*, No. 12-cv-09437-MMM-FMO, 2013 WL 815975, at *5 (C.D. Cal. Mar. 5, 2013) (collecting cases).

As the Ninth Circuit has recognized, fraudulent joinder is typically used to assert procedural defenses and immunities that are distinct from the underlying merits of the claim.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998); *Grancare*, 889 F.3d at 548–49 ("A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.").  For example, a successful statute of limitation challenge, *see Ritchey*, 139 F.3d at 1320 and *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), a state law privilege, *see McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987), or other inability to hold the defendant liable, *see United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002), are instances in which fraudulent joinder may be established because those defenses render the claim impossible.

### A. Disability Discrimination Claim under FEHA

In his Complaint, Plaintiff asserts a disability discrimination claim against Defendants Lozada and Fears under Cal. Gov. Code § 12940(a).  (Compl. ¶¶ 31–38.)  However, in the briefing on the pending Motions, Plaintiff concedes that under California law, individual supervisors–like Lozada and Fears–cannot be held personally liable for discrimination claims under FEHA.  (MTR at 7, citing *Reno v. Baird*, 18 Cal. 4th 640, 644–45 (1998); Opp'n to MTD at 5 (conceding that this claim is appropriate for dismissal under Rule 12(b)(6)).)  As there is no possibility of stating a claim against Defendants Lozada and Fears for disability discrimination under the

FEHA for purposes of fraudulent joinder, the Court will next evaluate whether Plaintiff has a possibility of stating a claim against them for IIED.  "In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant."  *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993 (D. Nev. Feb. 23, 2005) (citations omitted).

## B.  IIED Claim

In resolving this claim, the parties first dispute the appropriate burden of proof for fraudulent joinder.  Defendants contend the "plausibility standard applicable to pleadings in federal court" should apply but also argue that Plaintiff's IIED claim fails to satisfy even a "possible recovery" standard.  (Opp'n to MTR at 5–6.)  For his part, Plaintiff generally cites to the correct standard from *Hunter v. Philip Morris USA*, which provides that the moving party must make a showing that there is no possibility that the plaintiff could prevail on any claim against the non-diverse defendant "according to settled rules of the state."  582 F.3d 1039, 1043 (9th Cir. 2009) (citations omitted). As set out above in section I, the "no possibility" standard is the correct one for purposes of fraudulent joinder.

The elements of a claim for IIED are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–1051 (2009). Conduct is "outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.*  "Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court.  *Faulks v. Wells Fargo & Co.*, 231 F. Supp. 3d 387, 411 (N.D. Cal. 2017), *aff'd*, 728 F. App'x 781 (9th Cir. 2018).  Only if reasonable people may disagree is it "for the jury to determine whether the conduct was, in fact, outrageous." *Id.*

7

Here, Plaintiff does not currently state a colorable IIED claim.  (MTR at 9; Reply iso MTR at 5.)  Plaintiff attempts to distinguish *Janken v. GM Hughes Electronics*, which held that routine personnel management actions do not give rise to an IIED claim.  46 Cal. App. 4th 55, 80 (1996).  An essential element of such a claim is pleading outrageous conduct beyond the bounds of human decency.  *Id.*, citing *Cole v. Fair Oaks Prot. Dist.*, 43 Cal. 3d 148, 155 (1987).  Plaintiff's allegations simply do not rise to this level, particularly as Defendants Lozada and Fears are each named only once in the entire Complaint and the allegations concerning them involve Plaintiff's work restrictions within the scope of his employment.  (*See* Compl. ¶¶ 17–18.)

Plaintiff explains, however, that he would be able to amend the Complaint to add additional factual detail.  (*See generally* Reply.)  The Court finds that amendment of the IIED claim is feasible.  Defendants have not met their heavy burden in establishing that there is *no possibility* Plaintiff could state an IIED claim as they do not cite any authority that a state court, or settled state law, would find amendment futile.  (*See* Opp'n to MTR at 16–17.)

Defendants also claim that Plaintiff's IIED cause of action is preempted by the worker's compensation scheme.  But preemption is an affirmative defense, which is not appropriate for an inquiry into fraudulent joinder.  (*See* Defs.' Answer (ECF No. 1-3) at 3, Fourth Affirmative Defense); *see Hunter*, 582 F.3d at 1045 (ordering remand because defendants' affirmative defense "goes to the merits of the plaintiff's case"); *Doney v. Tambouratgis*, 23 Cal. 3d 91, 96 (1979) (observing that the Workers' Compensation Act is an affirmative defense).  Moreover, it is far from clear that such a defense would be successful.  Plaintiff argues that conduct which violates a fundamental policy falls outside the normal employment relationship.  (MTR at 10.)  Plaintiff also alleges that Defendants "implemented a 100% healed policy to support keeping Plaintiff on a forced leave of absence[,]" (Compl. ¶ 18), and that this policy amounts to disability discrimination in violation of FEHA, (MTR at 10), and is not preempted.  In *Cole v. Fair Oaks Fire Protection District*, the California Supreme Court

8

acknowledged that an employer's intentional efforts to cause emotional distress to an employee could give rise to an action outside of the workers' compensation system. 43 Cal. 3d at 159–61; *see also Livitsanos v. Superior Ct.*, 2 Cal. 4th 744, 756 (1992).

Wrongful discharge actions that involve a cause of action for termination in violation of public policy are "limited to those claims finding support in an important public policy based on a statutory or constitutional provision." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 79 (1998). Here, "FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for wrongful termination in violation of public policy." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 915 (N.D. Cal. Sept. 9, 2015) (citing *Rope v. Auto-Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 660 (2013)). To the extent Plaintiff asserts his IIED and disability discrimination claims in state court against Defendant Costco, there is a possibility he may be able to establish the public policy exception to California's workers' compensation scheme. Accordingly, the Court finds that amendment of the IIED claim would not be futile.

Accordingly, the Court concludes that Defendants have not carried their "heavy burden" to establish fraudulent joinder.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 7) is GRANTED and Defendants' Motion to Dismiss (ECF No. 5) is DENIED as moot. This matter is remanded to the County of San Joaquin Superior Court. The Clerk of the Court is directed to terminate all pending Motions and to close this case.

IT IS SO ORDERED.

Dated:   **April 2, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8 – Safdar.26cv00382.mtr & mtd

9